UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  24-056 (APM)** |
| | : | |
| v. | : | |
| | : | |
| **EZRA GRIFFITH** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**GOVERNMENT'S MOTION TO ADMIT OTHER CRIMES EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b) AND TO IMPEACH THE DEFENDANT WITH HIS PRIOR CONVICTIONS IF HE TESTIFIES AT TRIAL PURSUANT TO FEDERAL RULE OF EVIDENCE 609**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court, to admit the defendant's other crimes, which are relevant to the defendant's motive, intent, knowledge, and absence of mistake or accident, pursuant to Federal Rule of Evidence 404(b). Additionally, the United States moves to impeach the Defendant with his prior convictions, if he testifies at trial, pursuant to Federal Rule of Evidence 609. In support of its Motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter.

The defendant is charged by Indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1) and Forfeiture Allegation. As discussed in detail *infra*, some of this evidence is admissible, not pursuant to 404(b), but, rather, as intrinsic to the charged conduct. Given, however, that some of this evidence may properly be subject to admissibility analysis under 404(b) and to streamline issues for trial and ensure adequate notice to

1

the Court and defense, the government respectfully submits this motion and notice with respect to all such evidence.

The firearms and ammunition that were recovered in this case were, *inter alia*, constructively possessed by Defendant Griffith, and his constructive possession of those items will be the central issue at trial. Since the defendant's possession of the firearms and ammunition will be a disputed issue of fact, the government seeks to present evidence that on prior occasions the defendant possessed loaded firearms and ammunition. This evidence will assist the government in establishing that: (i) the defendant's possession of the firearms in this case was knowing, intentional, and not the product of mistake; and (ii) the defendant had a motive to possess the firearms. Consistent with well-established precedent, admission of the evidence is wholly appropriate because the prejudicial effect from the admission of this proffered other crimes evidence does not "substantially outweigh" its probative value.

Separately, to the extent the defendant may choose to testify at trial, the government seeks to impeach his credibility with his prior felony convictions.

## **FACTUAL BACKGROUND**

On November 15, 2023, at approximately 8:40 p.m., members of the Metropolitan Police Department's ("MPD") Fifth District Crime Suppression Team were working the evening tour of duty, operating marked police vehicles, and were in full police uniforms. Officers entered the parking lot of the Rosedale Recreation Center in Northeast Washington, D.C. and observed a small group of people congregating inside the fenced-in playground next to the recreation center building. The park was closed, so the officers went to make contact with the group. In fact, there is a sign next to the playground's only entrance noting that it is open from dawn to dusk.

As officers approached the fenced-in playground, the defendant immediately sat down

2

on a concrete partition and moved his hands near the front of his waistband, appearing to adjust an object in his lap. At that time, the defendant was observed making movements to the front of his waistband with his hands as if he were adjusting an object in the area of his lap. The evidence will show that the officers observed the defendant's movements directly at the defendant's waistline while he was seated on the bench. As officers got closer to the group, the defendant then stood up and immediately turned his back to the officers with his hands close to the front of his body. Officers could not see the defendant's hands as he picked up his pace, walking away from officers. As the defendant walked away, officers saw him continuing to look back over his shoulder at the officers. The defendant continued to walk away from officers as if he was going to run while concealing the front of his body. As officers entered the fenced-in playground, the defendant began to sprint along the inside fence line of the playground in a counterclockwise direction. Officer Nguyen was first through the fence and yelled, "stop!" and pursued the defendant around the inside fence line of the playground while Officer Wood ran in the opposite direction around the fence line to intercept the defendant. Based on the defendant walking away from officers, while concealing the front of his body, officers believed the defendant may possess a firearm.

    The defendant continued running along the fence line. Officer Wood continued around the playground along the fence line in the opposite direction of Officer Nguyen and the defendant. Officer Wood saw the defendant stop running after the defendant saw Officer Wood on the other side of the fence line. At that time, Officer Wood stopped and detained the defendant without incident. The defendant identified himself verbally to Officer Wood as Ezra Griffith and gave his date of birth. Officer Wood asked the defendant why he ran. The defendant stated that he was just drinking. Officer Wood could smell an odor consistent with alcohol emanating from the

defendant's person. Officers subsequently walked to the area where the defendant was first observed and saw an open bottle of alcohol, which confirmed the defendant's statements.

While officers were stopping the defendant, Officer Vanriel remained in the scout car nearby and saw that the street and sidewalks to be unoccupied and continued driving towards 18th Street, Northeast. Other members of the team were traveling east in the 1700 Block of Gales Street at which time they stopped in the block and exited their cars to assist the other members in the playground. After hearing the stop of the defendant was made, officers began canvassing the defendant's flight path. As Officer Anderson was approaching the playground, he saw a black firearm laying in the grass between the sidewalk and fence in the direct path that the defendant was seen running after the defendant saw the officers approaching. Neither of the responding officers saw anyone else in the area of the defendant's flight path. Indeed, the evidence will show that within approximately one minute from the time the defendant fled, Officer Anderson found a black firearm outside of the playground's fence in the grass between the sidewalk and the playground fence. The firearm was found between the location the defendant was initially observed and where he was stopped, consistent with it being tossed as he fled.

The firearm was recovered and determined to be a black Glock 27 .40 caliber semi-automatic firearm (SN# BUWL231). The firearm had one (1) round of ammunition inside the chamber and was loaded with twenty-nine (29) rounds of ammunition that were contained within a thirty (30) round magazine. The firearm, as found by Officer Anderson, is depicted below. *See* Figure 1 below:



*Figure 1 shows on ground black Glock 27 .40 caliber semi-automatic firearm loaded with 29 rounds of ammunition in a thirty-round magazine and one round in the chamber.*

In addition, the firearm and loaded magazine and the one round from the chamber of the firearm are depicted below. *See* Figures 2 & 3 below:



*Figure 2 loaded magazine with 29 rounds of ammunition in a thirty-round magazine.*



*Figure 3 - black Glock 27 .40 caliber semi-automatic showing loaded magazine with 29 rounds of ammunition in a thirty-round magazine and showing the one round in the chamber.*

The next day, MPD applied for a search warrant for a buccal swab for the defendant. The warrant was granted, and the defendant's buccal swab was subsequently tested against swabs from the firearm. The FBI's Laboratory Report concluded that the DNA results from the exterior components of the firearm were not suitable comparators because there was a mixture of five of more individuals obtained. But, as to the swabs of the lip and base of the magazine, the DNA results are **20 trillion times** more likely if the defendant and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors. Overall, there was very strong support for inclusion that the defendant's DNA was on the lip and base of the magazine.

I. **The Prior Convictions**

a. United States v. Ezra Griffith, 2009 CF2 008918 (CPWL and related offenses)

On April 18, 2009, MPD officers observed Griffith, in the Pentacles Apartment Complex in the 1500 block of Benning Rd., NE., Washington, D.C., with a cup half-full with liquid inside which had the odor and consistency of alcohol. Griffith ran as the officers approached him. Moments later, Griffith fell to the ground as he fled from the officers. As Griffith fell to the ground a Smith and Wesson 9mm semi-auto handgun fell to the ground from his person. The firearm was loaded with six (6) rounds of ammunition.

b. United States v. Ezra Griffith, 2010 CF3 024020 (Attempted Robbery)

On December 22, 2010, a complaining witness was at a vigil with a group of friends, three of which were later identified as Defendants Ezra Griffith, Dwayne Hilton and Carl Oliphant. The complainant had known the defendants for several years. The vigil was held in a parking lot near 1519 Benning Road, NE, Washington, DC. While standing in front of the complainant's apartment building, without warning, Griffith moved behind of the complainant and pinned the complainant's arms behind his back. Griffith said, "That's a nice coat you're wearing." Hilton and Oliphant

7

moved in front of the complainant and stood about an arm's length from the complainant, preventing him from leaving. Hilton said, "It's killing season." The complainant did not resist because he knew that Hilton had a gun. Griffith helped to remove the complainant's jacket. After taking the complainant's jacket, Griffith and the others all walked away.

## ARGUMENT

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts," is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). As the United States Court of Appeals for the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929. Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Id.* at 929-30 (quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).-

There is a two-pronged test for determining whether evidence of prior crimes is admissible under 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id.* Furthermore, it is not enough that

8

the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair.""); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original).

Admission of 404(b) evidence is permitted in the government's case-in-chief. Specifically, the government is entitled to anticipate the defendant's denial of intent and knowledge and to introduce similar act evidence in its case-in-chief. *See United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the government's case-in-chief if it is apparent that the defendant will dispute that issue"); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief"); *United States v. Bussey*, 432 F.2d 1330, 1333 n.13 (D.C. Cir. 1970) (noting that Rule 404(b) other crimes evidence to prove identity and to prove that prior and subsequent offenses are so identical as to mark them as handiwork of the defendant should be introduced in the Government's case-in-chief).

I. **Evidence of the Defendant's Prior Possession of Firearms and Ammunition is Appropriate Rule 404(b) Evidence of the Charged Offenses**

Defendant Griffith's prior convictions for possession of firearms and ammunition is highly probative of his knowledge of and intentional control over the firearms and ammunition recovered on November 15, 2023—particularly where the firearms were not recovered from the defendant's person. To convict Griffith of the possession charges, the government must prove that he

9

knowingly possessed the firearms recovered on the ground outside of the playground where the defendant was seen. Because there is no evidence that officers actually saw Griffith possessed the firearm - other than the DNA analysis, the government must prove that he "'knew of, and was in a position to exercise dominion and control over'" them. *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (quoting *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C. Cir. 1991)).

As the D.C. Circuit in *United States v. Cassell*, 292 F.3d 788 (D.C. Cir. 2002) noted:

> A successful conviction, then, includes proof of a physical element (dominion and control over the actual weapons) as well as a mental element (knowing possession). In this case, the physical element is not contested: Cassell does not dispute that the firearms were recovered from his bedroom. He instead disputes the fact that he ever possessed the firearms, either knowingly or unknowingly, because, according to him, the firearms belonged to his uncle.
>
> \*\*\*
>
> …the element in dispute was the mental element required for a conviction— that is, Cassell's knowing (and intentional) possession of the firearms recovered from his bedroom. We have previously held that "in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." *King*, 254 F.3d at 1100 (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)).

*Id.* at 792-93 (upholding a district court's ruling to admit evidence of two prior firearm possessions when a defendant was charged with possession of a firearm by a felon and possession of a firearm during drug trafficking when the firearms were recovered from defendant's uncle's apartment).

Similarly, Griffith disputes that he possessed the firearms and ammunition recovered from the ground and the DNA profiles developed from swabs of the firearms were interpreted more likely if the defendant and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors. Evidence of the defendant's 2009 and 2011 convictions would serve to rebut any argument that he lacked the requisite intent or knowledge with respect to the

10

firearms recovered in this case.

Where a defendant can argue that he lacked knowledge of the firearm that he is charged with constructively possessing, this Circuit has consistently recognized that evidence of a prior firearms possession is admissible under Rule 404(b). *See United States v. Linares*, 367 F.3d 941, 949 (D.C. Cir. 2004) (collecting cases); *see also United States v. McCarson*, 527 F.3d 170, 173 (D.C. Cir. 2008) (finding defendant's prior possession of firearms admissible under Rule 404(b) where firearm recovered in drawer in defendant's girlfriend's apartment); *United States v. (James) Brown*, 16 F.3d 423 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 900 (1994) (finding evidence of defendant's subsequent gun possession during his arrest made it less probable that pistols, found in safe during earlier search of home of friend of defendant, were there by mistake); *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994) ("Use of prior acts to show knowledge is a proper purpose under Rule 404(b) and knowledge is relevant to establish scienter for [a] possession of a firearm violation."); *United States v. (Wayne) Brown*, 961 F.2d 1039, 1042 (2d Cir. 1992) (finding evidence of defendant's simultaneous and subsequent possession of handguns properly admitted under Rule 404(b) as proof of defendant's knowledge and absence of mistake); *United States v. Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991) (finding prior conviction of possession of firearms relevant to current charge of possession of firearm to rebut claim that the current firearm possession was for an "innocent purpose" or "was mere accident or coincidence"); *United States v. Davis*, 792 F.2d 1299, 1305 (5th Cir. 1986) (holding that defendant's prior possession of the same weapons was admissible to establish that his charged possession was knowing).

Evidence admissible under Rule 404(b) is, like all evidence, subject to the restrictions of Rule 403. *See United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984). In this case, the highly probative value of Griffith's prior firearms convictions is not substantially outweighed by potential

11

prejudice to the defendant.[1] The case against Griffith, albeit strong, is unquestionably circumstantial. Because no witness will be able to directly state that they observed Griffith with the firearm, evidence showing his knowledge of firearms and his access to the firearms is immensely probative.

Any potential prejudice is not unique to this case — where the government has shown permissible non-propensity purpose — but is endemic to all 404(b) evidence. Such evidence "almost unavoidably raises the danger that the jury will improperly 'conclude that because [the defendant] committed some other crime, he must have committed the one charged in the indictment.'" *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (quoting *Crowder II*, 141 F.3d at 1210). Prejudice in this attenuated sense cannot justify a *per se* rule of exclusion. *See Crowder II*, 141 F.3d at 1210. The defense must show "compelling or unique" evidence of prejudice, *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995), distinct from the probative value of the evidence and distinct from the intrinsic prejudicial potential of any 404(b) evidence.

Moreover, the D.C. Circuit has consistently minimized the residual risk of prejudice not by exclusion, but by issuing limiting instructions to the jury. *See, e.g., Douglas*, 482 F.3d at 601 (emphasizing the significance of the district court's instructions to jury on the permissible and

---

[1] The government also notes that Griffith is charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922 (g)(1). Accordingly, the government's case-in-chief will require proof Griffith's knowledge of the prior convictions. *See Rehaif v. United States*, 588 U.S. 225, 139 S. Ct. 2191, 2194 (2019); *United States v. Brown*, No. 19-3098, 2021 WL 672366, at *2 (D.C. Cir. Jan. 19, 2021). Because the existence of a felony conviction is separately admissible for this purpose, the prejudice inquiry of the Rule 404(b) analysis is further undercut, as the jury will already hear evidence of the existence of a prior felony conviction. Moreover, while the government will confer with defense counsel regarding a stipulation this element, should defense counsel not agree to such a stipulation, the government would be permitted to admit the plea transcript, sentencing transcript, and any other evidence relevant to establishing the defendant's knowledge of his prior conviction.

impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

In *United States v. Cockerham*, 417 F.3d 919 (8th Cir. 2005), the Eighth Circuit found that "admission of prior firearm convictions in trial of a firearm charge was not unduly prejudicial." Id. at 921. The Circuit noted that,

> Cockerham submitted all of his arguments regarding prejudicial effects. The court decided that the probative value of those convictions in helping to prove Cockerham's knowledge and lack of mistake outweighed the potential prejudice resulting from admitting them into evidence. In recognition of this potential prejudice, the court issued an appropriate limiting instruction to the jury. Because Cockerham's knowledge was at issue in the trial and an appropriate limiting instruction was given to the jury, we find no abuse of discretion.

*Id.* at 922.

Here, a limiting instruction could similarly be fashioned to ensure that the jury could consider the evidence of the prior firearms possession solely for the appropriate purpose. The government would agree to a sanitized version of facts of 2009 and 2011 cases, as the 2011 case involve violent, assaultive conduct, to ensure that Griffith is not unduly prejudiced by the admission of this evidence. *See, e.g., United States v. Moore*, 75 F. Supp. 3d 444, 453 (D.D.C. 2014) ("[T]he Court is well-equipped to manage any possible prejudice through limiting instructions and instructions to the jury. Accordingly, the government will be permitted to use [defendant's] armed-robbery conviction as 404(b) evidence only to show that he previously used a gun during the commission of a crime, and it will not be permitted to delve into the violent details of that crime (e.g., that Moore hit his victim with a handgun during the robbery".).

II.     **The Government Should Be Permitted to Impeach the Defendant with His Prior Felony Convictions, Should He Testify at Trial**

Rule 609 of the Federal Rules of Evidence allows "for the admission of a defendant's prior convictions for purposes of impeachment, as long as the 'crime . . . was punishable by death or by imprisonment for more than one year' (that is, it was a felony), and 'the probative value of the evidence outweighs its prejudicial effect." *United States v. Ford*, 15-cr-25 (PLF), 2016 WL 259640, at *7 (D.D.C. Jan. 21, 2016) (quoting *United States v. Moore*, 75 F. Supp. 3d 444, 453 (D.D.C. 2014)). The Rule sets a higher bar for felonies where "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). In those instances, admission is still appropriate if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). As our Court of Appeals has observed, Rule 609 "stresses admissibility." *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980). "Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary." *Id.*

The government submits that Griffith's 2009 and 2011 convictions are admissible for impeachment purposes, pursuant to Fed R. Evid. 609. Because the convictions are felonies and Griffith was served terms of incarceration within the ten-year period prior to the instant criminal conduct, the admissibility inquiry for these convictions turns on whether the probative value of these convictions outweighs any prejudicial effect that may be caused by their admission for impeachment purposes.

The government submits that the probative value of these convictions plainly outweighs any prejudicial impact. In *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983), the

14

D.C. Circuit conducted an exhaustive review of the legislative history of Rule 609 and noted that "Congress believed that all felonies have some probative value on the issue of credibility," and held that "all felony convictions are probative of credibility to some degree." 702 F.2d at 1062 (emphasis omitted). This is particularly true here. As previously stated, although the government's case is strong, the evidence is largely circumstantial. As such, should Griffith elect to testify at trial in an attempt to explain away the government's evidence, place the blame on a third party or otherwise deny his involvement in the criminal conduct, his credibility will therefore be squarely at issue. *Id.* at 1071. Moreover, the serious nature of these prior convictions may be considered by the jury as indicative of Griffith's lack of veracity because they are directly probative of his respect for the law. For these reasons, Griffith's 2009 and 2011 felony convictions should be admitted pursuant to Fed. R. Evid. 609 because their probative value outweighs any prejudicial effect.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court permit at trial the introduction of its proffered other crimes evidence and permit the United States to impeach the defendant with his prior convictions if he testifies at trial.

        Respectfully submitted,
        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:    /s/ *Emory V. Cole*
        Emory V. Cole
        P.A. Bar No. 49136
        Assistant United States Attorney
        United States Attorney's Office for D.C.
        555 Fourth Street, N.W., Fourth Floor
        Washington, D.C. 20530
        E-mail: Emory.Cole@usdoj.gov
        Telephone: (202) 252-7692

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, this 5th day of August 2024.

                                                    /s/ Emory V. Cole
                                                    EMORY V. COLE
                                                    Assistant United States Attorney